UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LORI A. STANCOMBE,           )   1:14CV2274
                             )
            Plaintiff        )
                             )
        v.                   )   MAG. JUDGE KENNETH S. McHARGH
                             )
COMMISSIONER OF SOCIAL       )
     SECURITY,               )
                             )
                             )
        Defendant            )   MEMORANDUM
                             )   AND OPINION

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner

of Social Security ("the Commissioner") denying Plaintiff Lori A. Stancombe's

application for Supplemental Security Income benefits under Title XVI of the Social

Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and,

therefore, conclusive.

I.  PROCEDURAL HISTORY

On May 18, 2011, Plaintiff Lori A. Stancombe (hereinafter, "Stancombe")

applied for Supplemental Security Income benefits.  (Doc. 12, tr., at 14, 163-166.)

Stancombe's application was denied initially and upon reconsideration.  (Tr., at 14,

72-87, 103-105, 88-102, 109-111.)  On March 12, 2012, Stancombe filed a written

request for a hearing before an administrative law judge.  (Tr., at 112-115.)

An Administrative Law Judge ("the ALJ") convened a video hearing in Cleveland on November 27, 2012, to hear Stancombe's case. (Tr., at 31-71.) Stancombe was in Ashtabula, and was represented by counsel at the hearing. (Tr., at 33.) Robert A. Mosley ("Mosley"), a vocational expert, attended the hearing and provided testimony. (Tr., at 33, 63-70.)

On December 20, 2012, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Stancombe was disabled. (Tr.,

---

[1] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

2

at 15-26.)  Based on his review, the ALJ concluded Stancombe was not disabled.

(Tr., at 15, 26.)  Following the issuance of this ruling, Stancombe sought review of

the ALJ's decision from the Appeals Council.  (Tr., at 9-10.)  However, the council

denied Stancombe's request for review, thus rendering the ALJ's decision the final

decision of the Commissioner.  (Tr., at 1-3.)  Stancombe now seeks judicial review of

the Commissioner's final decision pursuant to 42 U.S.C. § 1383(c).

Stancombe briefs two issues:

1. Whether the ALJ properly evaluated the medical opinion of
consultative examiner Mary Helen Massullo, D.O.

2. Whether the ALJ properly evaluated the medical opinion of treating
physician[2] Betsy Bryan, Ph.D.

(Doc. 16, at 9.)


## II.  PERSONAL BACKGROUND INFORMATION

Stancombe was born on May 9, 1971, and was 40 years old as of the date of

her application.  (Tr., at 24, 163.)  Stancombe has a high school education.  (Tr., at

24, 182.)  She has past relevant work as a cashier/checker.  (Tr., at 24, 65.)

---

[2] Dr. Bryan is not actually a physician, but rather is a treating psychologist.  (Doc.
12, at 21.)

## III.  MEDICAL EVIDENCE[3]

In her application, Stancombe reported that "all of the physical or mental conditions" that limited her ability to work were "Left leg and arm injuries following car accident; severe depression; anxiety; fibromyalgia; bulging disc; nerve damage; left side has rods and pins."  (Doc. 12, tr., at 181.)  The ALJ found that Stancombe has the following severe impairments:  cervical disc bulging with mild radiculopathy, depressive disorder, post-traumatic stress disorder, and status post remote left tibia fracture with surgical fixation.  (Tr., at 17.)

Given the contested issues in this case, the primary focus is on evidence relating to Dr. Massullo's and Dr. Bryan's treatment, examinations, and opinions.

Upon referral from her family doctor, Stancombe began treatment with treating psychologist Betsy Bryan, Ph.D., of PsyCare, Inc., on July 19, 2007.  At that time, Stancombe reported that she was depressed and could not sleep.  She cried easily, and could not concentrate.  Dr. Bryan's initial diagnosis was Depressive Disorder NOS.  (Tr., at 268.)

Stancombe had an appointment with Dr. Bryan on April 20, 2011, to address her depression.  Dr. Bryan observed moderate to severe depression, stress, anxiety, and anger.  Stancombe had recently been experiencing many problems with her

---

[3] The following is merely a summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration.

boyfriend, causing her to consider moving out of the home, but had not in part due to financial considerations.  (Tr., at 338-339.)

Stancombe had another session with Dr. Bryan on May 18, 2011.  She reported that she had been having a lot of problems with her neighbors, and continued to have problems with her boyfriend, which has increased her anger and stress.  Dr. Bryan reported mild progress.  (Tr., at 340-341.)

At her June 2, 2011, appointment with Dr. Bryan, Stancombe reported that she had been feeling more anxious.  Although the neighbors moved out the previous day, the man had previously threatened to kill Stancombe and her children.  She had another big argument with her boyfriend, and threatened to move out, but has difficulty making a move.  Dr. Bryan reported that a mild degree of progress had been made since admission, and that continuing progress was anticipated.  (Tr., at 342-343.)

On July 5, 2011, at the request of the Social Security Administration, Dr. Bryan provided medical information regarding Stancombe's disability claim.  Dr. Bryan was asked to provide history, objective findings, diagnosis and prognosis, and work-related functional limitations.  (Tr., at 264.)

Dr. Bryan reported that Stancombe's mood is "chronically depressed and extremely anxious."  She noted that she was quick to anger, and "excessively irritated."  (Tr., at 265.)  Dr. Bryan stated that Stancombe had struggled with depression and anxiety for many years.  (Tr., at 266.)

Dr. Bryan was asked to describe any "significant problems with social interactions (especially as it would relate to the general public or coworkers/ supervisors)" and she responded:

> Lori [Stancombe] is easily triggered due to past trauma and low self-esteem. Therefore, she is defensive in many social interactions. She can react negatively and angrily. She is also easily overwhelmed by stressors and has difficulty relating calmly to the public or to coworkers/ supervisors.

(Tr., at 265.) As to her ability to tolerate stress, including work-place stressors, Dr. Bryan reported that Stancombe has problems tolerating stress, and that her baseline anxiety remained so high that small stressors can lead to some decompensation. (Tr., at 266.)

On September 8, 2011, at the request of the Social Security Administration, Stancombe had an internal medicine examination with Mary-Helene Massullo, D.O. Stancombe reported to Dr. Massullo that she had fibromyalgia, that she had a car accident in 2004, that her "whole left side" was "utterly useless," and that her whole right side goes numb. Stancombe claimed that she has used a non-prescribed cane since 2004, although she did not have it with her at the examination. (Tr., at 511.)

Stancombe told Dr. Massullo that an x-ray of her neck had revealed that she had five bulging discs, and her neck hurts constantly. Stancombe also reported: She was in automobile accident in 2004, and she was thrown from the car. Her right shoulder has bothered her since the accident, it hurts and she has a hard time moving it. Her left elbow has bothered her since 2004, and it pops and cracks. Her left knee has bothered her since that time, x-rays revealed a fractured tibia and

6

fibula, and she can't keep the knee bent for a long time or it will stiffen and hurt.

Stancombe also stated that her left leg is now a half-inch shorter than the right, but she wears no shoe inserts.  Also since 2004, her hips have bothered her, and they hurt, and her back has bothered her, and "it pinches and pounds with pain."  (Tr., at 511.)

Stancombe reported to Dr. Massullo that she can walk "maybe 1/2 mile," and she can ascend and descend stairs, left leg first, one at a time.  (Tr., at 512.)

Concerning "joint restrictions of motion," Dr. Massullo reported:

> The gait was abnormal with limp slight favoring the [left leg].  There was no apparent need for ambulatory aid but should she tire it may be beneficial for support.  She was right handed and was able to grasp and manipulate with each hand.  There was no restriction of motion except for the cervical spine in all planes, bilateral shoulders in all planes, DL spine in flexion, bilateral hips in flexion and SLR bilaterally, please refer to the neuromuscular skeletal data sheet.

(Tr., at 513.)  Dr. Massullo came to the following conclusions:

> Based upon my objective findings this patient is of working age and is not statutorily blind, they appear [sic] to be able to do work related types of activities such as hearing, speaking, sitting, walking, standing, lifting and traveling.  She has apparent discomfort moving around with diminished ROM and any extremely strenuous physical activity with prolonged walking, standing, sitting, traveling using BLEs[4], bending or lifting would be compromised accordingly.  A seated position, hearing, speaking and gross usage of BUES[5] where she would be able to get up and move about as needed appears possible.
>
> Mentally the patient appears capable.

_____

[4]  BLEs presumably indicating, "Bilateral Lower Extremities," or, one might say, "both legs."

[5]  BUES= "Bilateral Upper Extremities," or, in other words, "both arms."

(Tr., at 515.)

At a November 10, 2011, appointment with Dr. Bryan, Stancombe reported that she had been very depressed, and she had been "anxious and irritated as well in dealing with stressors in her neighborhood." (Tr., at 344.)  She was still living with her boyfriend, but reported some improvement in his behavior, and in her son's behavior as well.  She continued to have problems with her neighbors.  Id. Dr. Bryan assessed "minimal to mild progress."  (Tr., at 345.)

Stancombe continued to report severe depression in her December 14, 2011, visit to Dr. Bryan, but although she continued to struggle with her depression and anxiety, her depression was characterized as "moderate" at her January 12, 2012, visit.  (Tr., at 346, 348.)


## IV.  TESTIMONY OF VOCATIONAL EXPERT

The vocational expert, Robert A. Mosley, testified.  The ALJ stated that Stancombe had past work as cashier-checker, DOT number 211.462-014, which is classified as light, lower-level semi-skilled, with an SVP: 3.  The VE stated that since the work was classified as lower level, there would no transferable skills. (Doc. 12, tr., at 65.)

The ALJ posed a hypothetical question concerning an individual of the same age, education and vocational background.  The hypothetical person would be limited to work of light exertional requirements, but with the additional nonexertional limitations of no climbing of ladders, ropes, and scaffolds; frequent

8

climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching bilaterally; and mental limitations that she can perform simple, routine tasks in a predictable work setting involving superficial social interaction (that is, avoiding negotiation, arbitration, and confrontation).  The vocational expert was asked whether such an individual could perform past work. (Tr., at 66.)

Mosley responded that there would be work that such a hypothetical individual could perform.  Examples would include:  (1) cafeteria attendant, DOT 311.677-010, classified as light and unskilled, SVP: 2, with over 1,700 positions in northeast Ohio, 8,000 jobs statewide, and over 280,000 nationally; (2) clothing folder, 369.687-018, also classified as light and unskilled, SVP: 2, with over 1,200 employed in northeast Ohio, 5,000 jobs statewide, and over 200,00 nationally; and (3) assembler, plastic hospital products, 712.687-010, again light unskilled, SVP: 2, with over 1,400 positions in northeast Ohio, 5,000 jobs statewide, and over 100,000 nationally.  (Tr., at 66-67.)  Mosley testified that these are not the only jobs such an individual could perform, but they were representative examples.  (Tr., at 67.)

A second hypothetical posed by the ALJ retained the same characteristics and residual functional capacity, but with the addition limitation, that the individual would be off-task at least 20 percent of the time.  Mosley responded that such a hypothetical person would have a difficult time maintaining or retaining employment in any job in the local or national labor market, especially at the unskilled level.  (Tr., at 67.)

9

Counsel for Stancombe asked the vocational expert to modify the first hypothetical, to replace the light RFC with a sedentary RFC, and to change to occasional reaching in all directions.  The question then was whether the jobs listed by the VE would still be available, to which the VE answered, no.  Counsel then asked whether there were other jobs that would be available.  (Tr., at 67-68.)  The VE answered that the occasional reaching and handling at the sedentary level would greatly reduce the occupational base, but that there two jobs:  a surveillance system monitor, and a gate tender.  (Tr., at 68.)

Mosley clarified, in response to counsel's query, that under the ALJ's first hypothetical, the claimant would not be able to return to her past relevant work. (Tr., at 68-69.)

Counsel for Stancombe next asked the vocational expert to modify the first hypothetical, to add the restriction that the person cannot walk more than 200 feet without the use of a cane, and can't walk more than two hours total daily.  The VE responded that it would affect the cafeteria attendant job, but less so the assembler job, or the clothing folder, as the person is located at a bench, and can stand or sit to perform the job duties.  (Tr., at 69.)

Finally, counsel asked the vocational expert to modify the first hypothetical, to add the limitation that the hypothetical person would likely be absent at least three times per month.  The expert responded that such an individual would have a hard time maintaining and retaining employment in any job.  (Tr., at 69.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his

December 20, 2012, decision:

1.  The claimant has not engaged in substantial gainful activity since April 30, 2008, the beginning of the unadjudicated period (20 CFR 416.971 et seq.).

2.  The doctrine of res judicata applies in that the Administration has made a previous determination or decision under this subpart about the claimant's rights on the same facts, and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action.  (20 CFR 416.1457(c)(1))  As such, the undersigned dismisses the claimant's request for hearing through April 29, 2008.

3.  The claimant has the following severe impairments:  cervical disc bulging with mild radiculopathy, depressive disorder, post-traumatic stress disorder, and status post remote left tibia fracture with surgical fixation . (20 CFR 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b) with the additional limitations that she  can frequently climb ramps and stairs, but can never climb ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; can occasionally reach overhead bilaterally; and due to the claimant's mental impairments, she would be limited to performing simple, routine tasks in a predictable work setting, and involving superficial social interactions. (20 CFR 416.969a)

6.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.  The claimant was born on May 9, 1971, and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, since April 30, 2008, the beginning of the un-adjudicated period (20 CFR 416.920(g)).

(Doc. 12, tr., at 17-18, 20, 23-26.)

The ALJ found that Stancombe's symptoms did not satisfy the criteria of Listing 1.02 for major dysfunction of a joint.  The ALJ noted that Dr. Massullo found, during the consultative exam, that Stancombe had "no apparent need for ambulatory aid," and "was able to grasp and manipulate with each hand."  (Tr., at 18.)

The ALJ also determined that the severity of Stancombe's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 (affective disorders) or Listing 12.06 (anxiety-related disorders).  Rather than the "marked" difficulties required under the Listings, the ALJ determined that Stancombe's depression and anxiety caused mild functional

restrictions in activities of daily living.  In social functioning, her depression and anxiety caused moderate difficulties.  (Tr., at 19-20.)  The ALJ pointed to Dr. Bryan's treatment notes, which he stated "show the claimant has anxiety and anger problems that are exacerbated by problems with her boyfriend."  (Tr., at 19.)  The ALJ stated that Dr. Bryan assessed Stancombe's depression, anxiety, and anger as moderate.  (Tr., at 20, citing tr., at 340.)

The ALJ found:  "No records from an acceptable treating source indicate that the symptoms associated with the claimant's depression and anxiety would cause the claimant to decompensate as a result of exposure to a work environment."  (Tr., at 20.)

The ALJ found that Stancombe's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he found that Stancombe's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent with his residual functional capacity assessment.  (Tr., at 21.)

The ALJ found that Stancombe has not been under a disability since April 30, 2008, the beginning of the un-adjudicated period .  (Tr., at 26.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered

13

disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. § 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler,

745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence

in the record in making its decision, regardless of whether such evidence was cited

in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human

Servs., 884 F.2d 241, 245 (6th Cir. 1989).


## VIII.  ANALYSIS

### A.  Dr. Massullo

The first issue raised by Stancombe is:

Whether the ALJ properly evaluated the medical opinion of
consultative examiner Mary Helen Massullo, D.O.

(Doc. 16, at 9.)

State agency doctors are considered highly-qualified experts in disability

evaluation, and the ALJ must explain any rejection of the state-agency doctor's

opinions.  20 C.F.R. §§ 416.927(c)(1), (e)(2)(i) and (ii); SSR 96-8p.  "If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted."  SSR 96-8p.

Stancombe contends that, while the ALJ states he afforded substantial

weight to the opinion of Dr. Massullo, his findings contradict the assignment of

substantial weight.  (Doc. 16, at 11.)  Stancombe interprets Dr. Massullo's opinion

to limit her to seated work.  (Doc. 16, at 11.)  Stancombe argues that:  "The ALJ's

residual functional capacity ignore's Dr. Massullo's opinion that seated work is

necessary because limiting Stancombe to 'light work' presupposes that she can

stand and/or walk for 6 hours in an 8 hour work day." (Doc. 16, at 11, citing 20 C.F.R. §416.967(b).)

The Commissioner responds that Dr. Massullo did not limit the amount of time that Stancombe could sit, stand, or walk in a work day. (Doc. 18, at 13.) The Commissioner contends that, in the absence of such limitations in Dr. Massullo's opinion, the claimant cannot show how Dr. Massullo's opinion is inconsistent with "light work," when the statutory definition includes "sitting most of the time." (Doc. 18, at 13, discussing 20 C.F.R. §416.967(b).)

The regulations define "light work," in relevant part as ". . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §416.967(b). The court notes that the VE testified that in the assembler job, or the clothing folder, the person is located at a bench, and can stand or sit to perform the job duties. (Tr., at 69, 67.)

To revisit Dr. Massullo's conclusions in light of the above, her findings were that Stancombe is "able to do work related types of activities such as hearing, speaking, sitting, walking, standing, lifting and traveling." Dr. Massullo noted Stancombe's "apparent discomfort moving around with diminished ROM," and stated that "any extremely strenuous physical activity with prolonged walking, standing, sitting, [etc.] would be compromised accordingly." Dr. Massullo did not place any specific limitations on Stancombe's capacity, however, stating: "A seated

16

position, hearing, speaking and gross usage of [her arms] where she would be able to get up and move about as needed appears possible."  (Tr., at 515.)

Reading Dr. Massullo's conclusions, it is clear that she did not impose a "limitation for seated work," as Stancombe states (doc. 16, at 11), but rather said that "any extremely strenuous physical activity with prolonged walking, standing, sitting, [etc.]" would be problematic.  (Tr., at 515, emphasis added.)  Rather, Dr. Massullo did opine that Stancombe is "able to do work related types of activities such as hearing, speaking, sitting, walking, standing, lifting and traveling."  (Tr., at 515.)

The court finds that the ALJ's determination that Dr. Massullo's assessment of Stancombe's functional capacity is consistent with a range of light work is supported by substantial evidence.  (Tr., at 22.)  Dr. Massullo did not impose any limitation on the amount of time Stancombe could stand or sit in a work day, only the suggestion that the work provide her the freedom to "get up and move about as needed."  (Tr, at 515.)  *See generally Templeton v. Commissioner*, No. 06-5545, 2007 WL 413906, at *4 (6th Cir. Feb. 8, 2007) (per curiam) (similar restrictions consistent with light work).

## B.  Dr. Bryan

The second issue raised by Stancombe is:

Whether the ALJ properly evaluated the medical opinion of treating [psychologist] Betsy Bryan, Ph.D.

17

(Doc. 16, at 9.)

Stancombe asserts that Sixth Circuit case law mandates that a treating physician's opinion be given substantial deference.  (Doc. 16, at 12, citing *Walker v. Secretary, HHS*, 980 F.2d 1066 (6th Cir. 1992, and *Jones v. Secretary, HHS*, 942 F.2d 1365 (6th Cir. 1991).)  As noted earlier, Dr. Bryan is not a physician, but rather a psychologist.  Nevertheless, the "treating source" rule referred to by the claimant applies as well to a treating psychologist, such as Dr. Bryan.  20 C.F.R. §§416.927(a)(2), and (c)(2).

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating source rule," is a reflection of the Social Security Administration's awareness that physicians and other medical providers who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. § 416.927(c)(2).

Opinions from treating sources will generally be given controlling weight, where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  20 C.F.R. § 416.927(c)(2).  In other words, treating sources' opinions are only given deference when supported by objective medical evidence.  *Vance v. Commissioner of Social Security*, No. 07-5793, 2008 WL

162942, at *3 (6th Cir. Jan. 15, 2008) (citing Jones v. Commissioner, 336 F.3d 469, 477 (6th Cir. 2003)). Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 416.927(c)(1)-(6).

The ALJ is required to give good reasons for discounting evidence of disability submitted by a treating source. Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the opinion, and the reasons for that weight. Gayheart, 710 F.3d at 376; Blakley, 581 F.3d at 406-407; Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Stancombe contends that the ALJ's review of the record "does not mention the existence of an opinion provided by Dr. Bryan," a treating psychologist. (Doc. 16, at 13.) Stancombe points out that the opinion evidence was properly before the ALJ in the record, "and in fact, was procured by the Social Security Administration." (Doc. 16, at 13, citing tr., at 265-266.)

Stancombe notes that Dr. Bryan's response when asked to describe any "significant problems with social interactions (especially as it would relate to the general public or coworkers/ supervisors)" was:

> Lori [Stancombe] is easily triggered due to past trauma and low self-esteem. Therefore, she is defensive in many social interactions. She can react negatively and angrily. She is also easily overwhelmed by

stressors and has difficulty relating calmly to the public or to
coworkers/ supervisors.

(Doc. 16, at 13, quoting tr., at 265.)  Dr. Bryan had also reported that Stancombe
"becomes easily overwhelmed."  (Doc. 16, at 14, quoting tr.,  at 265.)  As to her
ability to tolerate stress, including work-place stressors, Dr. Bryan reported that
Stancombe has problems tolerating stress, and that her baseline anxiety remained
so high that small stressors can lead to some decompensation.  (Tr., at 266.)

Stancombe argues that these opinions by Dr. Bryan are never discussed, or
even mentioned, in the ALJ's decision.  Stancombe claims this cannot be harmless
error, because, although the ALJ does compensate for the existence of mentally-
based limitations in his RFC evaluation, the restrictions do not account for the
severity of the limitations opined by Dr. Bryan.  (Doc. 16, at 14.)

Stancombe asserts that the ALJ "only limits Stancombe to 'performing
simple, routine tasks in a predictable work setting, and involving superficial social
interactions.'"  (Doc. 16, at 14.)  She claims that the ALJ "never accounts for the
quantity of the social interactions which is particularly relevant in light of Dr.
Bryan's concerns on her limitation of being easily overwhelmed.  (Doc. 16, at 14,
citing tr., at 265.)

The Commissioner responds that the ALJ reasonably assessed the claimant's
mental residual functional capacity.  Despite her mental impairments, including
depressive disorder, and post-traumatic stress disorder, the ALJ found that she
retained the function to perform "simple, routine tasks in a predictable work

20

setting, and involving superficial social interactions." (Doc. 18, at 16, quoting tr., at 20.) The Commission asserts that the ALJ reasonably considered all relevant evidence to reach this mental RFC assessment. (Doc. 18, at 16, citing 20 C.F.R. §§ 416.945(a), 416.929.)

The Commissioner claims that Stancombe "mischaracterizes the evidence because Dr. Bryan did not produce a medical opinion for the ALJ to consider." (Doc. 18, at 16.) The Commissioner quotes the relevant regulation:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 416.927(a)(2).

The Commissioner contends that:

> . . . nowhere in the report at issue does Dr. Bryan opine on what Plaintiff can do despite her mental impairment – e.g., there is no comment as to how much social interaction Plaintiff can sustain in the workplace or what types of tasks Plaintiff can still complete despite her "difficulties" and "problems" with attention, concentration or memory.

(Doc. 18, at 17.) The Commissioner argues that the claimant cannot show that the ALJ failed to evaluate an opinion that does not exist. Id.

Stancombe identifies a July 5, 2011, medical report requested from Dr. Bryan by the Administration as an "opinion." (Doc. 16, at 13, citing tr., at 265-266.) The cover page is the request for Dr. Bryan to submit a medical report, to include:

History; Objective findings from most recent exams or lab tests; Diagnosis,

prognosis, treatment; and, specifically,

> Work-related functional limitations: the ability to sit, stand, walk, lift,
> carry, handle objects, hear, see, speak and travel.  For mental
> impairments, describe the patient's capacity for understanding and
> memory, sustained concentration and persistence, social interaction,
> and adaptation.

(Doc. 12, tr., at 264.)  In response to this request, Dr. Bryan answered the questions

on the form accompanying the request asking about Stancombe's abilities and

limitations, including, for example, the following relevant queries:

> 3.  Please describe all significant restrictions of daily activities.
>
> * * * * *
>
> 5.  Please describe significant problems with social interactions
> (especially  as it would relate to the general public or coworkers/
> supervisors).
>
> * * * * *
>
> 10.  Please describe patient's ability to tolerate stress (to include both
> routine daily stressors as well as work-place stressors.

(Tr., at 265-266.)  As related in Section III Medical History, above, Dr. Bryan

provided answers to the queries put to her.  Although the court commonly sees

medical opinions expressed in a narrative format or report, there is no reason why a

treating source's opinion cannot be expressed in the form of responses to the types

of specific inquiries, particularly concerning a claimant's "Work-related functional

limitations" (tr., at 264), such as occurred here.

22

However, to the extent that the Commissioner is arguing that the report is not an "opinion" because the report does not set out what the claimant's work limitations are, and what she can do despite her impairments (doc. 18, at 16-17), the court agrees.  A medical "opinion" under the regulations describes not only the nature and severity of the claimant's impairments, as Dr. Bryan did, but also what the claimant is capable of doing despite her impairments, and what her physical or mental restrictions are in the workplace.  See 20 C.F.R. § 416.927(a)(2); see, e.g., Dunlap v. Commissioner, No. 11-5633, 2012 WL 6700319, at *3 (6th Cir. Dec. 27, 2012).

Stancombe argues that, although the ALJ includes mentally-based limitations in his RFC evaluation, "the restrictions do not account for the severity of the limitations opined by Dr. Bryan."  (Doc. 16, at 14.)  Despite the fact that Dr. Bryan described Stancombe as "easily triggered," and "easily overwhelmed," Dr. Bryan did not opine on any specific related workplace limitations.  See, e.g., tr., at 266, § 10 (reporting "Lori has problems tolerating stress," without any indication of what she is capable of doing despite her problem).   The Commissioner contends that the ALJ properly considered and accommodated Dr. Bryan's findings throughout the decision.  (Doc. 18, at 17.)  For example, the ALJ cites to Dr. Bryan's assessment that the claimant's depression, anxiety, and anger were moderate. (Doc. 18, at 17; doc. 12, tr., at 20, citing tr., at 340 (May 18, 2011, service note); and tr., at 23, citing tr., at 336-347.)  The ALJ found that, in social functioning, Stancombe's depression and anxiety had caused moderate difficulties, relying in

23

part on Dr. Bryan's treatment notes.  (Tr., at 19-20, citing tr., at 332-356.)

However, the ALJ noted that no records from a treating source indicated that the

claimant's depression and anxiety would cause her to decompensate as a result of

exposure to a work environment.  (Tr., at 20.)

The ALJ specifically recognized Dr. Bryan's treatment records when the ALJ

assigned

> . . . substantial weight to the physical and mental assessments
> performed by the State agency's medical and psychological consultants
> as they are well supported by the aforementioned treatment records of
> Dr. Brocker, Dr. Detwiler, and Dr. Bryan, and the findings of Dr.
> Massullo, and are the basis for the limitations of this finding.

(Tr., at 23.)  The Commissioner notes that the ALJ's RFC findings reasonably

accommodated Stancombe's medically determinable physical and mental

impairments by limiting her to a reduced range of unskilled light work.  (Doc. 18, at

18.)

Stancombe points out that the cover letter to Dr. Bryan's  July 5, 2011,

medical report requested that Dr. Bryan include the claimant's "Work-related

functional limitations."  (Doc. 20, at 2, quoting tr., at 264.)  Stancombe then details

the responses that Dr. Bryan provided (doc. 20, at 2-3), which have been discussed

earlier here.  The court agrees that Dr. Bryan provided a description of Stancombe's

symptoms, and the nature of her mental impairments.  However, the court

disagrees with the claimant's contention that Dr. Bryan's medical report can be

characterized as "an opinion of record that provided greater restrictions than those

found in the ALJ's RFC." (Doc. 20, at 3.) Dr. Bryan's medical report does not discuss or recommend specific work-related functional limitations.

The ALJ found that, "due to the claimant's mental impairments, she would be limited to performing simple, routine tasks in a predictable work setting, and involving superficial social interactions." (Tr., at 20.) Dr. Bryan's July 5, 2011, medical report does not address what types of tasks Stancombe should be limited to performing, nor does the report address what type of work setting would be appropriate, nor what type of social interactions the claimant is capable of in a work environment. See generally tr., at 265-266. Thus, it cannot be said that Dr. Bryan's medical report "provided greater restrictions than those found in the ALJ's RFC." (Doc. 20, at 3.) Nor can the court find that the RFC contradicted Dr. Bryan's limitations, since her medical report did not provide any work-related functional limitations.

SUMMARY

In summary, the ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 416.927(e)(2). The ALJ evaluates every medical opinion received in evidence. 20 C.F.R. § 416.927(c). The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 416.945(a)(3). Although the ALJ reviews and considers all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. §

416.946(c).  Here, the ALJ's findings were supported by relevant evidence and consistent with  the record as a whole.  The court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence.  Accordingly, that decision is affirmed.

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The Commissioner's decision denying benefits is AFFIRMED.


IT IS SO ORDERED.

Dated:   March 2, 2016                  /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge